# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD LAWRENCE,<br><br>　　　　Petitioner,<br>　v.<br>NEUSCHMID, Warden,<br><br>　　　　Respondent. | Case No. 2:19-cv-04410-MWF (AFM)<br><br>**ORDER ACCEPTING FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, the records on file, the initial Report and Recommendation of United States Magistrate Judge ("August 29, 2019 Report"), and the Amended Report and Recommendation of United States Magistrate Judge ("Amended Report"). While Petitioner did not file objections to the Amended Report, the Court has considered the objections to the August 29, 2019 Report and has engaged in a *de novo* review of those portions of the Report to which objections have been made.

Petitioner's objections are overruled. The Court adopts the findings and recommendations contained in the Amended Report with the following exceptions and additions:

First, the Amended Report is corrected to reflect that the petition was constructively filed on May 8, 2019 – the date on which Petitioner signed the proof

of service and handed his petition to the appropriate prison official for mailing. (*See* ECF No. 1 at 68, 70.) *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Roberts v. Marshall*, 627 F.3d 768, 770 n.1 (9th Cir. 2010). Thus, the petition was filed after the one-year statute of limitation expired.

Second, while the Court agrees with the conclusion that Petitioner has failed to demonstrate that the actual innocence exception applies to him, the Court makes additional findings supporting that conclusion. As the Amended Report states, the Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" when his claims would otherwise be barred by the statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). In *McQuiggin*, the Supreme Court emphasized that "tenable actual-innocence gateway pleas are rare," explaining that: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 569 U.S. at 386, 399 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

A credible claim of actual innocence requires a petitioner to "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. In determining whether the petitioner has made the requisite showing, the court considers "all the evidence, old and new, incriminating and exculpatory, admissible at trial or not." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (en banc) (internal quotations omitted; citing *House v. Bell*, 547 U.S. 518, 538 (2006)). On this record, the court makes "'probabilistic determination about what reasonable, properly instructed jurors would do.'" *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 329).

Petitioner here has failed to meet *Schlup*'s exacting standard. In order to analyze the effect of Petitioner's evidence of innocence, the Court begins by

2

considering the evidence of guilt.[1]

Petitioner was convicted of one count of first degree murder; multiple counts of willful, deliberate, and premeditated attempted murder; and shooting at an occupied vehicle. All of the charges stemmed from three shootings that took place in an area known to be the territory of the Mona Park crips – a street gang that is a rival of Petitioner's gang, the Anzac Grape crips.

The first shooting occurred on the night of April 5, 2014. Erik Desarden, a member of the Mona Park crips, and his girlfriend, D'Anna Eleby, had parked Eleby's car on 122nd Street near Willowbrook Avenue. Desarden left the car to talk to five or six men he knew, who were standing in the street. Eleby was standing at the back of the vehicle when she heard gunshots. Desarden was struck by multiple bullets and killed. Keisa Sims, who lived nearby, was standing outside when gunfire erupted. The shots appeared to be coming from two men in hoodies standing at the stop sign on Willowbrook Avenue. A bullet struck Sims in the back. After the gunfire ceased, Sims saw the two men jogging quickly away. Numerous bullet shell casings were found at the scene.

The second shooting occurred approximately three weeks later. Jesse Drumgole drove with a friend to an apartment complex on Willowbrook Avenue just around the corner from the scene of the Desarden shooting. After purchasing marijuana, Drumgole was backing his car out of the driveway when a man started shooting at him and his passenger, shattering the vehicle's front window. Drumgole ducked and kept driving, realizing at some point that bullets had hit him in the back of the head and on his right shoulder. At the hospital later that night, a police detective showed Drumgole an array of six photographs. Drumgole identified Petitioner, whom he did not know, as the shooter.

---

[1] The following factual summary is drawn from the opinion of the California Court of Appeal. *See People v. Lawrence*, 2017 WL 65573, at *1–3 (Jan. 6, 2017). Where petitioner has not challenged the accuracy of a state court's summary of evidence, it is entitled to a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); *Tilcock v. Budge*, 538 F.3d 1138, 1141 (9th Cir. 2008).

3

The third shooting took place approximately one week later. Havon Williams, who was a member of the Mona Park crips, was walking in the vicinity of the other shootings when he heard gunfire. He saw a couple of people pointing guns, and started running. He was struck by a bullet in his buttocks. Williams was unable to identify the shooter.

Petitioner was linked to all three of the shootings by the testimony of Demontrey Cunningham, who had known Petitioner for about seven years. Cunningham lived on the block where the shooting of Desarden and Sims took place. At the time of trial, Cunningham was serving time on a gun possession charge. He testified that he received no special treatment or financial benefit from the government in exchange for his testimony. According to Cunningham, after Petitioner moved out of the neighborhood, he became an "all star" member of Anzac Grape gang. Anzac Grape had developed a rivalry with Mona Park as a result of a personal dispute between Petitioner and a member of Mona Park named Ohage.[2] Cunningham associated with members of Mona Park, but he testified that he was not a member of the gang.

On the night of the first shooting, Cunningham was walking on 122nd Street near Willowbrook Avenue. Cunningham saw a car pull up to the corner and saw Petitioner and another man exit the vehicle. Cunningham heard shots fired. He saw Petitioner with a gun and also saw that Desarden had been hit. Cunningham left the scene before authorities arrived, explaining that he did not want to give a statement because he was not part of the dispute between Anzac Grape and Mona Park and wanted "to leave that within their hood."

On the night that Drumgole was shot, Cunningham was again on Willowbrook Avenue near 122nd Street when he saw a car stop about 100 feet away. Petitioner

---

[2] The California Court of Appeal opinion refers to this individual as "Ohaji," as do portions of the Reporter's Transcript provided by Petitioner. (*See*, *e.g.*, ECF No. 1 at 23.) On the other hand, Petitioner and the law enforcement record attached to the petition both refer to the individual as Ohage Newton. (ECF No. 1 at 5, 66.) The Court adopts the name used by Petitioner.

4

exited the vehicle and started shooting at a car pulling out of an apartment building's parking structure. Cunningham had seen the victim's car when it initially pulled into the driveway. After this shooting, Cunningham called 911 "because [the victims] were innocent and they had nothing to do with Mona" and because he was concerned about the number of shootings occurring near his home. An audio recording of the 911 call was played for the jury. In the phone call, Cunningham identified himself using a pseudonym, but law enforcement officers subsequently ascertained his true name.

With regard to the third shooting victim (Williams), Cunningham testified that he knew Williams, and that Williams had called him shortly after the shooting. According to Cunningham's account of that phone call, Williams said that Petitioner had shot him on 119th Street. Williams, however, claimed he did not know and had never met or spoken with Cunningham.

All three shootings were also linked by forensic evidence. Specifically, the .45 caliber casings found at all three locations were fired from the same gun.

Finally, a police officer gang expert testified that Petitioner was a member of Anzac Grape, with a gang moniker of "Little Duss." The expert's opinion was based on admissions Petitioner had made directly to the officer and in rap videos posted on YouTube. One of those videos was played for the jury and included lyrics referring to the rivalry between the Anzac Grape and Mona Park gangs. The expert also explained the gang concept of "going hunting," which referred to going on a mission to hunt rival gang members, possibly in rival gang territory. In the expert's opinion, given in response to a hypothetical question, an Anzac Grape member who went to the area of 122nd Street and Willowbrook Avenue – rival territory of Mona Park – to shoot up a party committed the shooting for the benefit of Anzac Grape.

Here, Petitioner's evidence of actual innocence relates to a particular aspect of Cunningham's testimony. As Petitioner points out, Cunningham testified that after the first shooting, Cunningham called Ohage to warn him that Petitioner was looking

5

for him. (ECF No. 1 at 23, 53.) Petitioner contends that Ohage was in prison at the time Cunningham allegedly called him. (ECF No. 1 at 5, 66; ECF No. at 9-3 at 10.) He submits a declaration from Ohage in which Ohage states that he did not receive a phone call from Cunningham[3] on April 4 or 5, 2014; did not receive a warning from Cunningham "regarding anything" on those dates; did not see Petitioner on Willowbrook on those dates; and did not have "a problem with [Petitioner] of any kind" on those dates. (ECF No. 9-3 at 10.) Petitioner also submits evidence showing that Ohage was arrested on January 19, 2015. (ECF No. 1 at 66.) Based upon that evidence, Ohage must have been released from the April 2014 incarceration at some point.

Assuming that Ohage was in prison in April 2014, such evidence suggests Cunningham's testimony that he called Ohage was false. Ohage's declaration also conflicts with Cunningham's testimony that Petitioner had a personal dispute with Ohage. Impeaching Cunningham on these two points, however, does not necessarily undermine his testimony regarding Petitioner's involvement in the three shootings. As the Supreme Court observed in *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992), "evidence brought forward to impeach a prosecution witness will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of [the witness'] account of petitioner's actions." At best, Petitioner's evidence undercuts trial testimony offered by the prosecution. Casting doubt on the prosecution's case, however, does not affirmatively prove Petitioner's innocence. *See Jones v. Taylor*, 763 F.3d 1242, 1251 (9th Cir. 2014).

Moreover, Petitioner was positively identified by an independent witness – Drumgole. Nothing about the evidence relating to Cunningham and/or Ohage affects the reliability of Drumgole's testimony that Petitioner shot him. Nor does it impact the forensic evidence that the bullets used in the three shootings came from the same

---

[3] The declaration refers to "Mr. Cummings," which the Court presumes refers to Cunningham.

6

gun. Considering all of the evidence, old and new, the Court cannot conclude that no reasonable juror would have convicted Petitioner even if the juror heard evidence suggesting that Cunningham testified falsely regarding making a phone call to Ohage and evidence conflicting with Cunningham's testimony that Petitioner and Ohage had a personal dispute.

IT THEREFORE IS ORDERED that (1) with the foregoing exceptions, the Amended Report and Recommendation of the Magistrate Judge is accepted and adopted, and (2) Judgment shall be entered denying the Petition and dismissing the action with prejudice.

DATED: April 7, 2020

_____
MICHAEL W. FITZGERALD
UNITED STATES DISTRICT JUDGE